**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

MICHELLE COX,

        Plaintiff,

vs.

STATION CASINOS, LLC, *et al.*,

        Defendants.

Case No. 2:14–cv–638–JCM–VCF

**REPORT & RECOMMENDATION**

This matter involves Michelle Cox's employment discrimination action against Station Casinos. (*See* Amend. Compl. (#9) at ¶ 27[1]). Before the court is the casino's motion to compel arbitration (#16). Cox opposed (#23); and the casino replied (#27). For the reasons stated below, the casino's motion should be granted.

**BACKGROUND**

Michelle Cox began working at Texas Station Casino in November 2009. (Def.'s Mot. to Compel (#16) at 4:19–20). She is the Food and Beverage Director. (Amend. Compl. (#9) at ¶ 1). On May 2, 2011, Cox and the casino entered an employment agreement. (*Id*. at ¶ 35). Section ten of the employment agreement contains an arbitration clause. (*See* Contract (#16-1) at ¶ 10). It states:

> 10. **MUTUAL ARBITRATION AGREEMENT.**
>
>     10.1 **Arbitrable Claims**. Other than disputes specifically excluded in this Section 10, all disputes between the Employee (and her attorneys, successors and assigns) and the Company (and its trustees, beneficiaries, officers, directors, managers, affiliates, employees, agents, successors, attorneys and assigns) relating in any manner whatsoever to the employment or termination of employment of the Employee, including, without

---

[1] Parenthetical citations refer to the court's docket.

>limitation, all disputes arising under this Agreement ("Arbitrable Claims"), shall be resolved by binding arbitration pursuant to this Section 10 (the "Mutual Arbitration Agreement"). Arbitrable Claims shall include, but are not limited to, claims for compensation, claims for breach of any contract or covenant (express or implied), and tort claims of all kinds, as well as claims based on any federal, state or local law, statute or regulation, but shall not include the Company's right to seek injunctive relief as provided in Section 9 hereof. Arbitration shall be final and binding upon the parties and shall be the exclusive remedy for all Arbitrable Claims. **THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JUDGE OR JURY TO ARBITRABLE CLAIMS.**

The arbitration clause does not contain any fine print, confusing legalese, and appears to have been printed in twelve or thirteen point font. (*See id*.) Like every other page of Cox's employment contract, the bottom of the page containing the arbitration clause was initialed by Cox, indicating that she read, understood, and accepted the arbitration clause's terms. (*Id*.) Additionally, Cox signed her name at the end of the contract, indicating that she read, understood, and accepted the terms of the employment contract as a whole. (*Id*. at ¶ 22).

Nonetheless, on April 25, 2014, Cox filed suit in the United States District Court for the District of Nevada. Cox alleges that the casino violated the Equal Pay Act, 29 U.S.C. § 206(d), which prohibits discriminatory compensation practices based on gender. (Amend. Compl. (#9) at ¶ 28). Additionally, Cox alleges breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment claims. (*Id*. at ¶¶ 34, 45, 57). On April 29, 2014, defense counsel met and conferred with plaintiff's counsel and requested Cox to voluntarily dismiss her complaint and submit to arbitration because each cause of action relates to Cox's employment. (*See* Def.'s Mot. to Compel (#16) at 7:2–6). Cox refused. The casino's motion to compel followed.

## LEGAL STANDARD

"[A]n agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Chiron Corp. v. Ortho*

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)). The Federal Arbitration Act provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are enforced under sections 3 and 4 of the Act, which provide "two parallel devices for enforcing an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Under section 3, courts may order "a stay of litigation in any case raising a dispute referable to arbitration," while section 4 empowers courts to enter "an affirmative order to engage in arbitration." *Id.*; 9 U.S.C. §§ 3–4.

The Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *see also Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984) (finding that the Act "declared a national policy favoring arbitration"); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (stating that the Act "embodies a clear federal policy requiring arbitration" when there is a written arbitration agreement relating to interstate commerce). This means that "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

Despite this policy, arbitration is a "matter of contract" and no party may be required to arbitrate "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quoting *United Steelworkers*, 363 U.S. at 582). When determining whether a party should be compelled to arbitrate claims: the court must engage in a two-step process. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at

issue. *Id*. A party cannot be ordered to arbitration unless there is "an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd*., 636 F.2d 51, 54 (3d Cir. 1980)). If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms. *Chiron Corp*, 207 F.3d at 1130.

## DISCUSSION

Following the Ninth Circuit's decision in *Chiron*, the court addresses the casino's motion to compel arbitration by answering two questions: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue. Each question is discussed below.

### I.      Whether a Valid Arbitration Agreement Exists

Cox argues that the arbitration agreement is procedurally and substantively unconscionable and, therefore, invalid. In response, the casino argues that the arbitration agreement is not unconscionable and, even if it were, unconscionable provisions should be severed in accordance with the contract's severability clause and substituted by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, as the contract provides. Before addressing these arguments, the court reviews the governing law.

#### A.     *Relevant Law*

When determining whether a valid arbitration agreement exists, federal courts "should apply ordinary state-law principles that govern the formation of contracts" as well as "generally applicable contract defenses, such as fraud, duress, or unconscionability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Accordingly, when determining whether a defense to enforcement exists, the court relies on state law. *Gonski*

*v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (2010) (citing *Nagrampa v. Mailcoups, Inc*., 469 F.3d 1257, 1264–65, 1280 (9th Cir. 2006)).

Unconscionable arbitration provisions will not be upheld if the provision is both procedurally and substantively unconscionable. *D.R. Horton, Inc. v. Green*, 554, 96 P.3d 1159, 1163 (2004) (citing *Burch v. Dist. Ct*., 49 P.3d 647, 650 (2002)); *see also Gonski*, 245 P.3d at 1169 (stating that greater procedural unconscionability compensates for lesser substantive unconscionability and *vice versa*) (citations omitted). A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *D.R. Horton*, 554, 96 P.3d at 1163 (citation omitted). Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences. *D.R. Horton*, 554, 96 P.3d at 1163 (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002)). By contrast, substantive unconscionability focuses on the one-sidedness of the contract terms. *D.R. Horton*, 554, 96 P.3d at 1163 (citing *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003), *cert. denied*, 540 U.S. 811 (2003).

Even if a contract provision is unconscionable, Nevada recognizes the doctrine of severability. *Linebarger v. Devine*, 214 P. 532, 534 (1923); *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (1982); *Sprouse v. Wentz*, 781 P.2d 1136, 1140 (1989). Severability preserves the contracting parties' intent by maintaining the existence of a contract but striking illegal provisions that are collateral to the contract's primary purpose. *See Linebarger*, 214 P. at 534; *see also* 8 WILLISTON ON CONTRACTS § 19:70 (4th ed. 2014) (citing RESTATEMENT SECOND, CONTRACTS § 183, comment a) ("An illegal portion of an agreement that relates to the remedy is more readily separable.").

Several courts in the Ninth Circuit, as well as a leading contract treatise, have applied the doctrine of severability to arbitration agreements. *See, e.g.*, *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (finding that the arbitration agreement is not "permeated with unconscionability" and the three substantively unconscionable provisions may be severed); *Lara v. Onsite Health, Inc.*, CV 12–3337 MEJ, 2012 WL 4097712, at *13 (N.D. Cal. Sept. 17, 2012) (finding the single substantively unconscionable provision barring injunctive relief severable because the provision is "collateral to the main purpose of the contract" and not even implicated by the plaintiff's case); *Pruter v. Anthem Country Club, Inc.*, No, 13–cv–01028–GMN, 2013 WL 5954817, *9 (D. Nev. Nov. 5, 2013) (Leen, J.) ("However, the arbitration agreement contains an express provision allowing any invalid or unenforceable provision to be severed from the remaining parts of the arbitration agreement."); 21 WILLISTON ON CONTRACTS at § 57:27 (discussing the severability of arbitration provisions).

### B.    *The Arbitration Agreement is Valid*

Cox argues that the arbitration agreement is procedurally and substantively invalid for four reasons: (1) paragraph 10.2 unconscionably waived Cox's rights to cost and fee shifting; (2) paragraph 10.2 unconscionably forces Cox to pay arbitration costs; (3) paragraph 10.1 unconscionably precludes Cox from seeking injunctive relief; and (4) paragraph 10.2 contains an unconscionable shortening clause. (*See* Pl.'s Opp'n (#23) at 6:17, 8:19, 11:7, 12:19). The court disagrees.

#### 1.    Cox's Unconscionability Arguments are Moot

As an initial matter, the court notes that Cox's unconscionability arguments are moot for two reasons. First, Cox's employment agreement contains a severability clause. (*See* Contract (#16-1) at ¶ 11). It states:

6

> 11. **SEVERABILITY**.  In the event that any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, in whole or in part, the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law.

(*Id*.) The severability clause does not contain any fine print, confusing legalese, and appears to have been printed in twelve or thirteen point font. (*See id*.) Like every other page of Cox's employment contract, the bottom of the page containing the severability clause was initialed by Cox, indicating that she read, understood, and accepted the contract terms.

Assuming, *arguendo*, that the disputed portions of paragraphs 10.1 and 10.2 were procedurally and substantively unconscionable, the severability clause preserves the parties' agreement to arbitrate because the disputed provisions are collateral to the clause compelling arbitration. *Linebarger*, 214 P. at 534. Cox attacks provisions concerning procedure, costs, and relief. (*See* Pl.'s Opp'n (#23) at 6:17, 8:19, 11:7, 12:19). These provisions are collateral. 8 WILLISTON ON CONTRACTS at § 19:70 ("An illegal portion of an agreement that relates to the remedy is more readily separable."); *Lara*, 2012 WL 4097712, at *13 (finding a provision barring injunctive relief severable because the provision is "collateral to the main purpose of the contract" and not even implicated by the plaintiff's case). Accordingly, the heart of the casino's motion—(*viz*., that Cox's employment contract contains an enforceable arbitration clause that compels arbitration)—is undisputed.

Second, Cox's employment contract states that arbitration is governed by "the National Rules for the Resolution of Employment Disputes of the American Arbitration Association." (*See* Contract (#16-1) at ¶ 10.2). In pertinent part, Rule 1 provides that "[i]f a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules." To the extent that any of the disputed provisions are unconscionable—and, therefore, materially inconsistent with the Rules—Cox's concerns are moot because the contract cures any purported defect

by importing the Rules.[2]

Accordingly, Cox's unconscionability concerns are moot. The issue before the court is whether Cox should be compelled to arbitrate. Cox does not dispute the clause requiring arbitration. Her only concerns are collateral. These concerns are either severable under state law or cured by the Rules, which Cox's employment contract incorporates. Therefore, if the court reaches the question of unconscionability, the court should sever the unconscionable provisions and enforce the parties' agreement to arbitrate. *Pruter*, 2013 WL 5954817, *9 (Leen, J.) (stating that even if the court found a provision unconscionable, it would sever the unconscionable provision and affect the arbitration clause).

### 2.   In Any Event, No Provision is Unconscionable

Having concluded that Cox's unconscionability arguments are moot, the court briefly discusses why none of the four disputed provisions are unconscionable. Each of the four provisions is addressed below.

#### *i.   Paragraph 10.2 & Cox's rights to cost and fee shifting*

In full, paragraph 10.2 states:

> 10.2 **Procedure**.   Arbitration of Arbitrable Claims shall be in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, as amended, and as augmented in this Agreement. Either party may bring an action in court to compel arbitration under this Agreement and to enforce an arbitration award. Otherwise, neither party shall initiate or prosecute any lawsuit, appeal or administrative action in any way related to an Arbitrable Claim. The initiating party must file and serve an arbitration claim within (60) days of learning the facts giving rise to the alleged claim. All arbitration hearings under this Agreement shall be conducted in Las Vegas, Nevada. The Federal Arbitration Act shall govern the interpretation and enforcement of this Agreement. Each party shall bear its own attorneys' fees and costs incurred in any such arbitration proceeding, and the fees of the arbitrator shall be divided equally between the parties.

---

[2] The court defers to the Arbitrator's expertise on the question of whether a material inconsistency exists. At this stage, all the court needs to determine is whether the employment agreement compels arbitration. For the reasons stated throughout this order, it does.

(*See* Contract (#16-1) at ¶ 10.2). Relying on the Nevada Supreme Court's decision in *D.R. Horton*, Cox argues that this section is procedurally unconscionable. Cox's reliance on *D.R. Horton* is misplaced. Like every other provision in the contract, this section does not contain any fine print, confusing legalese, and appears to have been printed in twelve or thirteen point font. (*See id.*) Like every other page in the contract, the bottom of the page containing this paragraph was initialed by Cox, indicating that she read, understood, and accepted the contract terms. By contrast, the contracts in *D.R. Horton* "were difficult to read and the arbitration clause was on the back page. The signature lines, in contrast, were on the front page." *D.R. Horton*, 554, 96 P.3d at 1164. Cox's assertion that the last sentence should have been bolded in order to draw her attention to it is meritless. Cox's contract and the contracts in *D.R. Horton* are incomparable.

Next, Cox argues that paragraph 10.2 is substantively unconscionable because it waives her right to costs and fee shifting under the Equal Pay Act, 28 U.S.C. § 1920, 29 U.S.C. § 255(a). It does not. Paragraph 10.2 defers to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. Rule 1 of the Rules provides that "[i]f a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules." Additionally, Rule 39(d) states that "[t]he arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable laws." Accordingly, if any portion of paragraph 10.2 conflicts with the Rules, the employment contract states that the Rules control.

### ii.     *Paragraph 10.2 & Arbitration Costs*

Next, Cox argues that paragraph 10.2 is unconscionable because "it forces Cox to pay costs regarding arbitration." (Pl.'s Opp'n (#23) at 8:19). It is not. First, as discussed above, there is nothing in the recording indicating that paragraph 10.2 is procedurally unconscionable. To be unconscionable, an

arbitration provisions must be both procedurally and substantively unconscionable. *D.R. Horton*, 554, 96 P.3d at 1163; *Gonski*, 245 P.3d at 1169.

Second, the Ninth Circuit requires that mandatory arbitration agreements, such as this one, not expose a plaintiff to a greater financial risk than she would face if she litigated the claims in federal court. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010). Paragraph 10.2 does not violate this rule of law because it defers to the National Rules for the Resolution of Employment Disputes and, therefore, applies Rule 39(d). (*See supra* § I.B.2.i).

### iii.  Paragraph 10.1 & Injunctive Relief

Cox next argues that paragraph 10.1 is unconscionable because it prevents her from seeking injunctive relief. In pertinent part, paragraph 10.1 states:

> **Arbitrable Claims** shall include, but are not limited to, claims for compensation, claims for breach of any contract or covenant (express or implied), and tort claims of all kinds, as well as claims based on any federal, state or local law, statute or regulation, but **shall not include the Company's right to seek injunctive** relief as provided in Section 9[3] hereof.

(*See* Contract (#16-1) at ¶ 10.1) (emphasis added). This argument fails for two reasons. First, as with paragraph 10.2, nothing in the record indicates that paragraph 10.1 is procedurally unconscionable.

Second, paragraph 10.1 is not substantive unconscionable. It does not prevent Cox from seeking injunctive relief. Presumably, Cox infers that paragraph 10.1 prevents her from seeking injunctive relief because it reserves the company's right to seek injunctive relief without also reserving her right to seek injunctive relief. But, paragraph 10.1 is silent with regard to Cox's right to seek injunctive relief. Accordingly, there is no basis to conclude that it necessarily includes or excludes Cox's right to seek injunctive relief.

---

[3] Section 9, which is a covenant not to compete, is not relevant to the casino's motion to compel. (*See* Contract (#16-1) at ¶ 9).

In any event, Cox did not waive her right to seek injunctive relief. As stated before, the employment contract incorporates the National Rules for the Resolution of Employment Disputes. This includes Rule 39(d), which permits "[t]he arbitrator [to] grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable laws." This includes injunctive relief. *Ferguson v. Corinthian Colleges, Inc*., 733 F.3d 928, 937 (9th Cir. 2013) (stating that an "arbitrator generally has the authority to enter injunctive relief against a party that has entered into an arbitration agreement").

### iv.  Paragraph 10.2 & the Shortening Clause

Finally, Cox argues that paragraph 10.2 is unconscionable because it limits the statute of limitations to sixty days. In pertinent part, paragraph 10.2 states: "The initiating party must file and serve an arbitration claim within (60) days of learning the facts giving rise to the alleged claim." To be unconscionable, an arbitration provisions must be both procedurally and substantively unconscionable. *D.R. Horton*, 554, 96 P.3d at 1163; *Gonski*, 245 P.3d at 1169.

As previously stated, there is nothing in the record indicating that paragraph 10.2 is procedurally unconscionable. It does not contain any fine print, confusing legalese, and appears in twelve or thirteen point font. Like every other page in the contract, the bottom of the page was initialed by Cox, indicating that she read, understood, and accepted the contract terms. As a result, Cox's unconscionability argument fails as a matter of law.

In any event, there is no dispute that Cox's complaint was filed timely. Additionally, if the shortening period was both procedurally and substantive unconscionable, it should be served and replaced by Rule 4 of the National Rules for the Resolution of Employment Disputes incorporates the relevant state and federal limitations periods.

**II.     <u>Whether Cox's Arbitration Agreement Encompasses this Action</u>**

The court turns to the second inquiry under *Chiron*: whether the arbitration agreement encompasses Cox's employment discrimination action. *Chiron Corp*, 207 F.3d at 1130.

In judging the scope of an arbitration agreement, Nevada courts "resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Assoc. Firefighters v. City of Las Vegas*, 764 P.2d 478, 480 (1988). "Disputes are presumptively arbitrable, and courts should order arbitration of particular grievances 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. at 481. Invoking precedent of the United States Supreme Court, the Nevada Supreme Court has stated that "in cases involving broadly worded arbitration clauses, 'in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id*. (quoting *AT&T Tech., Inc*., 475 U.S. at 650.

The casino's arbitration agreement encompasses Cox's employment discrimination action for two reasons. First, the arbitration agreement unequivocally states that it encompasses claims "relating in any manner whatsoever" to Cox's employment. (*See* Contract (#16-1) at ¶ 10.1). Here, Cox stated four causes of action that directly relate to her employment. Cox's complaint seeks (1) "relief for herself, and all others similarly situated, a judgment for unpaid wages, and additional liquidated damages of 100% of any wages" under the Equal Pay Act, 29 U.S.C. § 206(d); (2) damages for the casino's alleged breach of Cox's employment contract; (3) damages for the casino's alleged breach of the contractual duty of good faith and fair dealing; and (4) restitution "for the reasonable value of the services Cox performed/benefits conferred upon Station [Casino]." (Amend. Compl. (#9) at ¶¶ 33, 43, 54, 61). Second, Cox's complaint expressly concedes that her action relates to the terms of her employment.

(*See id*. ¶¶ at 35–56) (stating that Cox and the casino are parties to an employment agreement, the conditions of which Cox performed, and the obligations of which the casino breached).

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Station Casino's motion to compel arbitration (#16) be GRANTED.

IT IS FURTHER RECOMMENDED that that Station Casino's motion to compel (#8) and second motion to compel arbitration (#13) be DENIED AS MOOT.

IT IS SO RECOMMEDED.

DATED this 24th day of June, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE